UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

TONY GARCIA,

    Plaintiff,

v.                                Case No. 3:21cv514-LC-HTC

WARDEN DONALD LEAVINS,

    Defendant.

_____/

REPORT AND RECOMMENDATION

Plaintiff Tony Garcia, proceeding *pro se* and *in forma pauperis*, filed this action under 42 U.S.C. § 1983, the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 701, *et seq.*, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq*. ECF Doc. 1. On April 20, 2021, the Court conducted an initial screening of the complaint and entered an order allowing Plaintiff an opportunity to amend the complaint to state a cause of action against the Defendants. Plaintiff filed an amended complaint on May 9, 2021. ECF Doc. 11.

The undersigned has screened the amended complaint, and while finding that the RA and ADA claims should be served as to Inch,[1] recommends Plaintiff's Eighth Amendment claims (to the extent he is attempting to assert such claims), as well as

---

[1] By separate order, the Court will order Plaintiff to provide one (1) service copy of the amended complaint for Inch.

his requests for declaratory relief, be dismissed as to all Defendants. Additionally, because all three (3) Defendants are sued only in their official capacities, essentially representing a suit against the Florida Department of Corrections ("FDOC"), the undersigned recommends Defendants Leavins and Santiago be dismissed as redundant and unnecessary defendants.

## I.     THE AMENDED COMPLAINT

Plaintiff, an inmate of the FDOC, currently incarcerated at Santa Rosa Correctional Institution ("Santa Rosa C.I."), brings this action against three (3) defendants in their official capacities: Santa Rosa C.I. Warden Donald Leavins, Santa Rosa C.I. Assistant Warden J. Santiago, and FDOC Secretary Mark Inch.[2] ECF Doc. 11 at 2–3. As an initial matter, the amended complaint details three (3) seemingly unrelated events, which are not organized in any sort of logical order. Thus, for purposes of this report and recommendation, the undersigned has reorganized the allegations in chronological order. Additionally, where Plaintiff references dates that have not yet occurred (e.g., year 2031), the undersigned interpreted the allegation as falling within a date that has passed. The complaint sets forth the factual allegations that follow, the truth of which is accepted for the purposes of this order.

---

[2] Plaintiff incorrectly lists Secretary Inch's official position as "Inspector General." ECF Doc. 11 at 3.

Plaintiff is a paraplegic with stage four gastric cancer and a broken right elbow. *Id.* at 5. On June 9, 2020, Plaintiff filed an informal grievance concerning privacy screens for the "HandiCap" shower and toilet. ECF Doc. 11 at 16. One of the privacy screens broke, so Plaintiff's dorm has to share the sole remaining screen with another dorm. *Id.* Due to the refusal of the "CO's to allow Plaintiff to use the privacy screen," Plaintiff "has been forced to shower out in the open for the dorm to watch as Plaintiff attempts to bathe with only one good arm," as no "HandiCap inmates get priority on the use of the privacy screen" or the "HandiCap" shower. *Id.* Plaintiff also claims the lack of a "HandiCap" toilet caused him to have an accident, and he was "forced to clean himself up . . . out in the open . . . per the refusal of the CO's to allow Plaintiff the use of the privacy screen." *Id.*

On July 29, 2020, Plaintiff "wrote [an] informal grievance to Lt. Unruh after CO Blum had written a work order for a replacement shower wand and hose for the HandiCap shower." *Id.* at 15. This grievance was approved on July 31, 2020, but the shower wand and hose were never replaced. *Id*. Plaintiff states that Lt. Unruh is "well aware" of Plaintiff's disabilities, yet Plaintiff was "denied [l]ife's necessities and [was] refused . . . a reasonable accommodation for a disable[d] person." *Id.*

On October 10, 2020, Plaintiff filed another informal grievance to Major Oaks (who is not a defendant in this action) relating to the "refusal of the CO to allow Plaintiff" the use of the privacy screen, "forcing Plaintiff to shower out in the open

in the view of the dorm." *Id.* at 17.  On October 21, 2020, Plaintiff also wrote a formal grievance about the shower head to Defendant Leavins and never received a reply.  ECF Doc. Doc. 11 at 15.  Plaintiff notes that both Major Oaks and Defendant Leavins are "well aware" of Plaintiff's disabilities.  *Id*. at 15, 17.

On December 2, 2020, Plaintiff "wrote a formal grievance to [the FDOC] on the wand and hose issue," and this grievance "was denied[,] stating that it had been previously been [sic] approved."  *Id.* at 15.  On February 10, 2021, "Plaintiff wrote a grievance to Warden Leavins on another CO refusing to allow Plaintiff the use of the privacy screen."  *Id.* at 17.  This grievance was denied on March 1, 2021.  *Id.*  On February 20, 2021, "Plaintiff appealed grievance denied by Assistant Warden Santiago over the privacy screens to [FDOC]."[3]  *Id.* at 16.  The grievance "was denied by T. Bouden[,] claiming that there was on[e] in M-Dorm . . . being used."  *Id.*  Plaintiff takes issue with Bouden's (who is not a defendant in this action) failure to clarify which side was using the screen, who was using it, and whether it was "just sitting behind the [officers'] station where the CO's like[d] to keep it."  *Id.*

On February 28, 2021, a maintenance worker turned off the "HandiCap toilet" because "it was leaking when it was flushed[,] making it inoperable."  *Id.* at 5.  When informed of the broken toilet, "Plaintiff asked Sgt. Hobert . . . if Plaintiff could use

---

[3] Plaintiff does not explain whether this grievance is related to the grievance denied on March 1, 2021.  In other words, it is unclear whether Plaintiff simply appealed the denial of his grievance or filed multiple grievances relating to the privacy screen.

the Handicap [toilet] next door [and] was told no." *Id*. Additionally, Plaintiff attempted to talk to Captain Brown about using the "HandiCap" toilet next door, but Captain Brown refused to talk to him and instead replied to him by saying that "she had already heard about the Plaintiff's perdicament [sic] and that no Plaintiff could not use the HandiCap one next door [and] just to deal with it." *Id*. Plaintiff alleges this created a hardship for him and that Defendants failed to provide him a reasonable accommodation, as Plaintiff needs a trapeze bar to get on and off the toilet due to his disabilities. *Id.* at 5–6.

On the same day, "Plaintiff wrote a form [sic] grievance to [Defendant] Leavins informing him of the Plaintiff[']s attempt to talk to Cpt. Brown about the HandiCap toilet situation." *Id.* at 6. This grievance was denied by Defendant Santiago on March 1, 2021. Plaintiff filed another grievance to Defendant Leavins, noting it was an "Emergency grievance . . . to try to get the only Handicap toilet that Plaintiff could use repaired." *Id.* at 6. Plaintiff also wanted to see if he could use the nearby "HandiCap toilet next door." *Id*. On March 4, 2021, this grievance was denied by Defendant Santiago. *Id.*

Additionally, on the same day, "at around 1900 hrs when Cpt. Schrock did his walkthrough, Plaintiff informed Cpt. Schrock about the toilet situation" and "that [it] was the only toilet the Plaintiff was able to use [since he is] paraplegic with Stage 4 gastric cancer with use of only one arm." *Id*. Captain Schrock (who is not a

Case No. 3:21cv514-LC-HTC

defendant in this action) assured Plaintiff that the toilet was going to be repaired "ASAP," but it was not repaired. *Id.* Further, the Plaintiff tried to obtain access to the nearby handicapped-accessible toilet and was denied. *Id.*

On March 3, 2021, "Plaintiff wrote an informal Emergency grievance and mailed it to Santiago," stating that "[the broken toilet for inmates with disabilities] was a violation of the settlement agreement between Disability Right Florida and Julie Jones (D.R.F. and J.J.) . . . not to provide a working accommodation till [sic] . . . the one that [is] broken [is] repaired." *Id.* at 14. Defendant Santiago denied the grievance, stating that the toilet was operable. *Id.* Plaintiff also "wrote and mail[ed] a formal Emergency grievance to Secretary, Florida Department of Corrections" concerning the toilet. *Id.* The grievance was denied by "A. Johns," who stated "that this had to be dealt with at the institutional level," and Plaintiff notes "that nothing was done about the toilet issue." *Id.*

On March 11, 2021, a correction officer "from maintenance came into M-1 dorm," and Plaintiff asked if the officer was going to repair the "HandiCap toilet." *Id.* The officer responded that he was told by Defendant Santiago not to repair it, and that "we the 'Handicap' would just have to deal with it." *Id.* On the same day, "Plaintiff wrote another formal grievance [and] mailed it to Secretary, [FDOC] informing them that the toilet problem continued . . . ." *Id.* This grievance was denied by "A. Adams" on March 19, 2021. *Id.* at 15.

On March 30, 2021, Plaintiff wrote a formal grievance to Defendant Leavins, informing Leavins that Officer "Wade had [two] inmates come into the HandiCap shower where Plaintiff was taking a shower" and wanted the inmates to take the privacy screen from the Plaintiff so that another inmate, who did not have a disability, could use the screen. *Id.* at 17. In this instance, "Warden Leavins approved the grievance from that standpoint and forward[ed] it to [the FDOC] on April 16, 2021." *Id*. However, Plaintiff asserts that a sufficient number of privacy screens has not been provided, resulting in a "demeaning" experience when Plaintiff bathes, while "normal physically fit inmates get a four and a half . . . foot wall to stand behind while showering." *Id.* at 18.

Based on these incidents, Plaintiff contends Defendants violated his "[c]onstitutional rights to receive [l]ife's necessary reasonable accommodation for a disable[d] person" under 42 U.S.C. § 1983, the RA, and the ADA. *Id.* at 7. Specifically, Plaintiff alleges, *inter alia*, various violations of his Eighth Amendment rights, such as (1) leaving Plaintiff without a "working HandiCap toilet," (2) refusing to get toilet repaired and refusing to allow Plaintiff use of a nearby "HandiCap" toilet, (3) denying a grievance, (4) not ensuring an emergency repair order was carried out, (5) failing or refusing to investigate failed accommodation for a disabled person, and (6) not answering a grievance. *Id.* at 18–19.

For relief, Plaintiff seeks declarations that Defendants (and some non-Defendants) violated Plaintiff's Eighth Amendment rights based on the alleged violations listed above. *Id.* at 7, 22. Plaintiff also seeks injunctions requiring Defendant Leavins to (1) repair and maintain the "HandiCap" toilet, (2) supply a privacy screen for the "HandiCap" shower to be anchored to the wall, (3) supply privacy screens for the "HandiCap" toilet, (4) supply and maintain a new shower hose and wand and ensure the "HandiCap" shower is accessible at all hours for inmates with disabilities, and (5) place a sign on the "HandiCap" shower wall that says "Handicap inmates only." *Id.* at 22–23. Finally, Plaintiff requests compensatory damages for his "physical and emotional injuries" as well as punitive damages. *Id.* at 22–23.

## II.   STANDARD OF REVIEW

Because Plaintiff is a prisoner proceeding *in forma pauperis* and seeking relief against a governmental employee, the Court has an obligation to review the complaint, identify cognizable claims, and dismiss the complaint, or any portion thereof, if the complaint "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(a), (b); *see also* 28 U.S.C. § 1915(e)(2)(B) (applying the same standard to *in forma pauperis* proceedings).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) a violation of federal law or the Constitution; and (2) that the alleged violation was committed by a person acting under the color of state law. *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005) (per curiam). Dismissals under the PLRA for failure to state a claim are generally governed by the same standard as dismissals under the Federal Rules of Civil Procedure. In screening the complaint, the Court reads Plaintiff's *pro se* allegations in a liberal fashion. *See Haines v. Kerner*, 404 U.S. 519 (1972).

### III. DISCUSSION

As discussed below, the undersigned recommends Plaintiff's Eighth Amendment claims be dismissed as to all Defendants and also finds that Plaintiff's ADA and RA claims should be dismissed as to the Warden and Assistant Warden.

#### A. Eighth Amendment Claims

As set forth above, the crux of Plaintiff's allegations concerns the institution's failure to accommodate his disabilities by failing to provide him with an operable handicap-accessible toilet and shower as well as privacy screens. Plaintiff, however, includes in the amended complaint vague references to the Eighth Amendment and seeks declarations that officers, some of whom are not named defendants, have violated his Eighth Amendment rights. To the extent Plaintiff seeks to assert an Eighth Amendment claim against the Defendants, such a claim should be dismissed.

Case No. 3:21cv514-LC-HTC

As an initial matter, Plaintiff sues Defendants only in their official capacities. A suit against a state officer, employee, or agent in his official capacity is a suit against the employing entity. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell v. New York City Dept. of Social Servs.*, 436 U.S 658, 690 n.55 (1978) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"); *Faulkner v. Monroe Cnty Sheriff's Dept.*, 523 F. App'x 696, 701 (11th Cir. 2013) ("A suit against a person in their official capacity is treated as a suit against the entity."). Thus, Plaintiff's claims against the Warden, Assistant Warden, and Inch in their official capacities are the equivalent of claims against the FDOC.

"To impose § 1983 liability on [the FDOC], a plaintiff must show: (1) that his constitutional rights were violated; (2) that the [FDOC] had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). A government entity, such as the FDOC, may be liable in a section 1983 action "only where the [government entity] itself causes the constitutional violation at issue." *Cook ex. rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla.*, 402 F.3d 1092, 1116 (11th Cir. 2005) (citations omitted). Thus, in an official capacity suit, plaintiff must establish that an official policy or custom of the government entity was the "moving force" behind the alleged constitutional deprivation. *See Monell*

*v. Dep't of Soc. Servs.*, 436 U.S. 658, 693–94 (1978); *Graham*, 473 U.S. at 166 ("[I]n an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law.").

In *Monell*, the Supreme Court held that government entities can be held liable for constitutional torts caused by official policies. However, such liability is limited to "acts [that] the [government entity] has officially sanctioned or ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). Under the directives of *Monell*, a plaintiff also must allege that the constitutional deprivation was the result of "an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law." *Denno v. Sch. Bd. of Volusia Cty.*, 218 F.3d 1267, 1276 (11th Cir. 2000) (citations omitted).

"A policy is a decision that is officially adopted by the [government entity], or created by an official of such rank that he or she could be said to be acting on behalf of the [government entity]." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997) (citation omitted). The policy requirement is designed to "distinguish acts of the [government entity] from acts of employees of the [government entity], and thereby make clear that [governmental] liability is limited to action for which the [government entity] is actually responsible." *Grech v. Clayton County, Ga*, 335 F.3d 1326, 1329 n.5 (11th Cir. 2003) (quotation and

citation omitted). Indeed, governmental liability arises under section 1983 only where "deliberate choice to follow a course of action is made from among various alternatives by governmental policymakers." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (quoting *Pembaur*, 475 U.S. at 483–84).

A government entity rarely will have an officially adopted policy that permits a particular constitutional violation; therefore, in order to state a cause of action under section 1983, most plaintiffs must demonstrate that the government entity has a custom or practice of permitting the violation. *See Grech*, 335 F.3d at 1330 ("Because a county rarely will have an officially-adopted policy of permitting a particular constitutional violation, most plaintiffs, and Grech, must show that the county has a custom or practice of permitting it and that the county's custom or practice is the 'moving force [behind] the constitutional violation.'"); *McDowell*, 392 F.3d at 1289 ("It is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable.").

A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 404 (1997) (citation omitted). The Eleventh Circuit has defined "custom" as "a practice that is so settled and permanent that it takes on the force of law" or a "persistent and wide-spread practice." *Sewell*, 117 F.3d at 489. Lastly, "[t]o hold the [government entity] liable,

there must be 'a direct causal link between [its] policy or custom and the alleged constitutional deprivation.'" *Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1271 (11th Cir. 2005) (quotation omitted).

Plaintiff, however, wholly fails to allege the FDOC has a custom or policy that caused a violation of his constitutional rights. Indeed, *nowhere* in the complaint does Plaintiff even mention a custom or policy. Because Plaintiff failed to identify an FDOC custom or policy that led to the violation of his constitutional rights, Plaintiff's Eighth Amendment official capacity claims against all Defendants should be dismissed.

Regardless, Plaintiff is not entitled to the relief requested—namely, a declaration that Defendants and certain non-defendant officers violated his Eighth Amendment rights. As the Court previously advised Plaintiff, to the extent Plaintiff's requests concern past conduct, declaratory judgment is not available as relief. *See Hitchcock v. USAA Cas. Ins. Co.*, 2020 WL 364600, at *2 (M.D. Fla. Jan. 22, 2020); *Regency of Palm Beach, Inc. v. QBE Ins. Corp.*, 2009 WL 2729954, at *4 (S.D. Fla. Aug. 25, 2009) ("The point of a declaratory judgment is to permit 'actual controversies to be settled before they ripen into violations of law,' not to adjudicate past conduct." (quoting *Great Lakes Reinsurance (UK) PLC v. TLU Limited*, 2008 WL 828122 (S.D. Fla. Mar. 27, 2008))).

Finally, as to the Eighth Amendment claim, the undersigned finds allowing Plaintiff a second opportunity to amend his claims would be futile. Notably, despite having the opportunity to correct the deficiencies in his initial complaint, which asserted the same claims, Plaintiff still fails to allege any facts showing that the named Defendants, in their individual capacities, violated his Eighth Amendment Rights.

As Plaintiff was previously advised, "[i]t is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted). Instead, for the Warden, Assistant Warden, or Inch to be liable in their individual capacities for a violation of the Eighth Amendment, Plaintiff must allege facts showing that Defendants personally participated in the constitutional violation or that there is a causal connection between the Defendants' alleged conduct and the constitutional violation. *See id.*

Plaintiff's complaint, however, is devoid of any facts showing that Santiago or Leavins personally violated his Eighth Amendment rights. Instead, Plaintiff alleges Santiago and Leavins failed to answer or denied grievances, neither of which is a constitutional violation, *Swift v. Tifft*, 2013 WL 5913796, at *9 (N.D. Fla. Oct. 31, 2013), and failed to investigate, which also is not a constitutional violation,

*Fulmore v. Andre*, 2012 WL 4856938, at *3 n.8 (M.D. Fla. Oct. 12, 2012). Similarly, the allegation that Santiago told an officer not to repair the toilet, alone, does not show deliberate indifference. It does not show Santiago actually knew of a serious risk of harm by not repairing the toilet and disregarded that risk by conduct that is more than mere negligence. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

Also, because, as stated above, Plaintiff has not alleged the existence of any custom or policy, or of widespread abuse, he has not alleged facts necessary to establish a causal connection. *Gonzales v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003), *abrogated on other grounds by Randall v. Scott*, 610 F.3d 701, 707–10 (11th Cir. 2010) (citation omitted).

Regardless, "[t]o make out a claim for an unconstitutional condition of confinement, 'extreme deprivations' are required." *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). A prison condition is unconstitutional only if it deprives the plaintiff of a human need, *Jordan v. Doe*, 38 F.3d 1559, 1565 (11th Cir. 1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 305 (1994)), or otherwise "'pose[s] an unreasonable risk of serious damage to his future health' or safety," *Chandler*, 379 F.3d at 1289 (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)).

The lack of a privacy screen or broken shower wand is simply not an "extreme deprivation." Likewise, although Plaintiff alleges the toilet needed to be repaired, there are no facts showing what repairs were needed, if the toilet was completely inoperable, of if Plaintiff was able to use a non-handicapped-accessible toilet in lieu of the handicapped-accessible toilet. Thus, Plaintiff has not shown that the failure to repair the toilet resulted in an "extreme deprivation."

Thus, because after two attempts, Plaintiff has failed to allege an underlying Eighth Amendment claim against Defendants in *any* capacity, it would be futile to allow him a second opportunity to do so.

### B.     Redundant Defendants

Plaintiff's RA and ADA claims against the Warden and Assistant Warden should also be dismissed. As stated above, because Plaintiff has already sued Inch in his official capacity as Secretary of the FDOC, Plaintiff need not also sue the Warden and Assistant Warden in their official capacities. To do so is redundant because a claim against all three, in their official capacities, is essentially a claim against the FDOC. *Dixon v. McNesby*, No. 3:08-CV-246-RV/MD, 2009 WL 10674252, at *3 (N.D. Fla. Jan. 6, 2009) (granting motion to dismiss sheriff deputies and officers in their official capacities because their inclusion in the lawsuit was redundant since plaintiff was also suing the Sheriff in his official capacity); *Cooler v. Escambia Cty. Det. Facilities*, No. 307CV188/RV/MD, 2007 WL 2254304, at *1

(N.D. Fla. Aug. 3, 2007) ("[S]ince plaintiff sues Captain Brenda Chromiak solely in her official capacity as director of the Escambia County Jail, it is duplicative and superfluous to name her as a defendant when Sheriff McNesby is already named in his official capacity."); *Edison v. Florida*, 2007 WL 80831, at *2 (M.D. Fla. Jan. 8, 2007) ("It is well settled that an official capacity suit is essentially a suit against the entity, and is redundant where the entity *or its representative* is a party to the suit." (emphasis added)).

The Court therefore recommends Plaintiff's ADA and RA claims, as well as his claims for damages and injunctive relief, proceed only against Defendant Inch, as the highest ranking named official, and Defendants Leavins and Santiago be dismissed from this action.[4] *Skellett v. Washington*, 2019 WL 6974733, at *6 (W.D. Mich. Dec. 20, 2019) (dismissing plaintiff's official-capacity claims under the ADA as redundant against warden, deputy warden, and other defendants and allowing said claims to proceed only against the Director of the Michigan Department of Corrections because she was "the highest ranking named official").

---

[4] Importantly, this recommendation would not preclude Plaintiff from obtaining injunctive relief against Santa Rosa C.I. officials because—should Plaintiff be successful in this action—an order enjoining the Secretary of the FDOC would also bind FDOC employees such as Leavins and Santiago.  *See M.R. v. Bd. of Sch. Comm'rs of Mobile Cty.*, 2012 WL 2931263, at *4 (S.D. Ala. July 18, 2012) ("[I]f plaintiffs successfully obtain a prospective injunction barring the Board from implementing a custom or policy . . ., then imposition of a similar injunction against the Individual Defendants in their official capacities would gain precisely nothing for plaintiffs, but would simply reiterate the injunction against the Board.").

## IV. CONCLUSION

Accordingly, it is RESPECTFULLY RECOMMENDED:

1. To the extent Plaintiff seeks to assert an Eighth Amendment claim against all Defendants in their official capacities, as well as claims for declaratory relief, such claims be DISMISSED under 28 U.S.C. § 1915A(b)(1) and § 1915(e)(2)(B)(ii) for Plaintiff's failure to state a claim upon which relief may be granted.

2. Defendants Leavins and Santiago be DISMISSED as defendants in this action.

3. This case be referred to the undersigned for further proceedings.

Done at Pensacola, Florida this 25th day of June, 2021.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**

Case No. 3:21cv514-LC-HTC